The court will now move to case number 19-2084, Daphne Smith v. RecordQuest. We're going to begin with counsel for the appellant, Mr. Boreson. Thank you, Your Honor. Good morning. May it please the court, I represent Ms. Daphne Smith. Wisconsin law limits what a patient can be charged with obtaining copies of their own medical records. That's what the issue here is. Ms. Smith was overcharged by the defendant, RecordQuest, who is the appellee in this case, and sued them because they had charged more than allowed by Wisconsin law. Now, RecordQuest's involvement was Ms. Smith had asked her medical provider to go ahead and provide copies of her own records, and instead of them responding directly, they had RecordQuest respond on their behalf. In doing so, the invoice that they send, they say, look, here's what we're charging you, and I think it's notable that in their own invoicing, they say we're going to charge you in accordance with the regulated rates under Wisconsin law. But they didn't. They overcharged her. Now, at the district court, on a motion to dismiss, the court granted the motion to dismiss, finding that because RecordQuest was not a health care provider, that it could not be held liable for overcharging Ms. Smith. Respectfully, we think that that's wrong for three different reasons. The first reason being that it undermines the statute. And this particular law has already been addressed by the Wisconsin Supreme Court, not on this precise issue, but they basically set out the law in Wisconsin under a case called Moya v. Royal Health Care Services, that they would not allow this law to be undermined, even by equitable defenses of waiver or involuntary payment. But important for this case is the fact that they wanted this law to be enforced. It was not enforced in this situation because Ms. Daphne Smith was charged more than what's allowed by the law. The second reason is that we think it's wrong, that the decision was in error, is because the statute that allows for remedies under this law says that any person who violates those provisions can be held responsible. Now, the district court addressed that briefly and said, look, I think the reason that they used the term any person was the purpose behind it was because there's other provisions of that law that might not apply to health care providers and assume that the intent was. But we don't assume the intent when the words are clear and ambiguous. And those words are clear and ambiguous that any person who violates the law can be held responsible. The last reason is that it leads to an absurd result. The interpretation that a hospital or any health care provider can simply evade this law and the patient has to pay more for their health care records because the health care provider decides to use a third party to charge to provide those records. Clearly leads to the absurd result that what health care provider would provide the records directly if all they need to do is bring in, which raises the issue on what basis would the record quest have any ability to charge for these records? It's not their records. This whole statute is designed to make sure that patients do not have to pay more for their records than what the law allows. Now, since Mr. Borson, let me let me ask you this. I'm sure you're I'm sure your response is going to be it's not a relevant question. But let me ask it and see if see if I can bait you into telling me. Why didn't your client also sue the Milwaukee Health Services? I totally understand why she sued Record Quest. That's that's who the envelope came from. But why not also sue Milwaukee Health Services? I guess the simple answer is follow the money. We don't know whether Record Quest got the money. So if we had sued the health care provider, their defense would be we didn't get any money. It was all Record Quest. And we've seen that I've handled a number of these cases. We've seen that argument where everybody says, well, we didn't get the money. So how can you possibly hold us liable? You can't show actual damages. These would be us, the health care provider. That answers the question. So money, meaning the fee that the fee that she has to pay to get the records, they they say that went to Record Quest. You should sue Record Quest. Correct. Do you do you ever in cases and both of them and say, look, you guys figure out who owes who what? I just know my client was overcharged. Yes, your honor. We have done that. And like I said, we've run into various defenses in this particular case. It was pretty clear for two reasons. Record Quest, they were sent the money. Plus, Record Quest took on itself to say that they were charging these fees in accordance with Wisconsin regulations. So it seemed pretty clear cut case that we didn't have to go against the medical provider. If there's some arrangement between medical provider and Record Quest, they could also bring them in as a third party if they wanted to. If they thought they were responsible, for instance, if they had turned over the money to the health care provider for these fees that were improper under Wisconsin law. So when you bring up that language on the when you bring up that language on the invoice that in effect says we follow the Wisconsin regulations. Are you are you saying that to suggest that Record Quest has somehow admitted a billing mistake? Like is is Record Quest saying, hey, why are you suing us? We actually just made an error in the amount on the invoice. We intend to follow the Wisconsin fee schedule, but we made a mistake. Well, your honor, I don't think that they can credibly claim that. I mean, to the extent that they're saying the regulations are pretty clear cut as to what fees are allowed and what fees are not allowed. And so the idea that somehow it's a mistake, we're suggesting that that representation was was an understanding. So until the case got before the court, they understood they were subject to these regulations. So what we have is sort of the legal defense is thrown on a factual basis that does not support it. That's why we point out that. And then I would just point out to the court two things. One is there's been two subsequent developments since this case. One is the charge swap case, which is what we cited. We submitted in our reply brief, which is the court of the Wisconsin Court of Appeals directly addressed this decision and disagreed with it. They found that it undermined the statute, misinterpreted the agency law and also was led to an absurd result. The other thing that has occurred is in a subsequent case, Judge Adelman recognized that there might be a basis in the hardwood case. There might be a basis for the court to to recognize the claim at a minimum against the agent on the basis that an agent under Wisconsin law may not recover or may not retain fees that its principle was not entitled to charge. Mr. Borson, you're referencing the fact that there's quite a bit of self-conscious precedent here, right? You've got Judge Van Grunsven from the Milwaukee County Circuit Court making reference to Smith. You have the Wisconsin Court of Appeals making reference to Smith. You've got Judge Adelman in Harwood making reference to Smith. And then, of course, the reference in the footnote in Harwood to Smith as well. We are sitting here in diversity. Assuming that the membership of the LLC in South Carolina is resolved, we're then put in this position of deferring to the highest Wisconsin court. Is your argument to us Townsend controls regardless of its reasoning? And that should be dispositive for us? Or what's your take on that? I do think I don't under the case law. It appears that since it's an intermediate court that you're not bound by it. But I think what you're going to create is a situation where you have two entirely two separate approaches to a Wisconsin state law, depending on whether you're in federal court or whether you're in state court. I would suggest that following it. And I also believe the reasoning offered by the chart swap court was sound. And the last thing I would just note when we submitted it, it was just it has since been published by the Court of Appeals. So it's now precedent in the states. So anybody who sees in the state court in Wisconsin is going to be bound by chart swap. But for some reason, there's a removal. We'd end up with dual tracks, different rules on Wisconsin law, depending on whether you're in state or federal court. Will chart swap be appealed? Or I should say petition for certiorari be filed in Wisconsin Supreme Court with regard to charts. They have filed a petition for review. The petition review, we filed a response to it waiting on the court's decision as to whether or not they will take it up for review or not. I think, though, for purpose. And so I guess it's still an open question potentially, but I will tell you under Wisconsin law at the moment, since it's now published, it is precedent in the state of Wisconsin. Thank you, Mr. Borson. I'm going to give you some time on rebuttal because we used up your time with questions. Mr. Butler, let's move to you on behalf of the appellee. Thank you, Your Honor, and may it please the court. I'm Tim Butler with the Trautman Pepper firm on behalf of the dependent Pelley Record Quest. At the outset and with the firm's and the court's indulgence, I'd like to offer up a few thoughts to frame the issues. So let's make sure we understand the facts here. The plaintiff asserts that she has submitted a health record request to a health care provider and that an agent of that health care provider who is not a health care provider responded to the request and charged a fee that a health care provider may not charge. She further alleges that she was harmed by that excessive fee to the tune of twenty nine dollars and twenty two cents for each records request that she submitted. OK, those are the facts. At the outset, the court should decide whether the plaintiff's claims are time barred. In determining whether the plaintiff's claims are time barred, the court must decide whether the remedies provision imposes a statutory penalty or instead imposes something more akin to compensatory or actual damages. In determining whether a statute imposes a statutory penalty, the authority suggests, including Black's Law Dictionary and others, that the question is whether the penalty or the remedy imposed is untethered from compensatory damages such that it is in fact punitive or penal. Here, the remedies provision provides for actual damages, but then it goes further. It provides for what it calls exemplary damages, and those exemplary damages may be as high as twenty five thousand dollars. So let's hold what we have here in mind. Actual damages, twenty nine dollars and twenty two cents recoverable as actual damages. Exemplary damages may be as high as twenty five thousand dollars. The exemplary damages are called exemplary damages because they are intended to be punitive. You have cited case law in Wisconsin that equates exemplary damages with punitive damages. The amount is decidedly untethered from the amount of actual damages incurred in a situation where the health records statute is violated. And further, there is there is just no basis for looking at a twenty five thousand dollar exemplary award and comparing that to actual damages or some form of relief intended to put the plaintiff back in its position pre-violation. So on its face, the remedies provision establishes a statutory penalty. Because it establishes a statutory penalty, the plaintiff's claim are time barred. OK, there's a two year limitations provision. The complaint clearly alleges records requests submitted more than and paid out more than two years prior to the complaint being filed. The claims are time barred now in response to that showing, which is nearly unassailable, I'd suggest. The plaintiff has suggested that the court should look to cases under Wisconsin law where Wisconsin courts have examined statute of provisions providing for damages multipliers and struggle to determine whether the damage multipliers are intended to compensate or to punish. OK, and we focused on two sorts of cases. We focused on a case where the damages multiplier is twice the damages awarded. And in that case, the court said this may be compensatory. And we've seen a statute where the awards were three times the damages. And the court said in that circumstances, this is probably punitive. We have here a statute where the multiplier, to the extent there was a multiplier between twenty nine dollars and twenty two cents and twenty five thousand is massive. We are in a decidedly different realm than those cases. They are not in this respect relevant to a case that is not close. They are closed cases. This is not a closed case. But in any event, if you look to those cases, what will you find? You will find courts inquiring whether the statute imposes a penalty and is intended to punish or if it is instead trying to impose something akin to compensatory damages. They're looking at damages multipliers, something tethered to the actual damages amount and saying, well, you're multiplying, you're doing it by reference to the actual damages. The question is, how far can you go before it becomes punitive rather than compensatory? But that's not our realm. A thousand damage multiplier where the damages multiplier is a thousand is clearly in the realm of the punitive. For that reason alone. On the merits question, does RecordQuest knowingly bill above the fee schedule? And in your view, is that lawful? In my view. When they're doing it on behalf of a health care provider, you know, they've been contracted to be the records processor, et cetera, record, you know. The question is, how is liability imputed? OK, so we have in our briefs noted that the act of the agent is attributable to the principal. OK, so here, if RecordQuest as an agent of a principal has charged excessive fees, the principal is responsible for that conduct and is the appropriate avenue for seeking relief. Your question was that I know that I get that. My question is more, so let me give you a hypothetical. Forget these facts. Let me give you a hypothetical. Suppose ABC Records Company gets together with XYZ Hospital. And XYZ Hospital says, hey, look, here, there's a fee schedule statute in Wisconsin that we don't like. And we can make some money off the back of. So you, ABC, process the records and send the requests out. Don't follow the fee schedule. Charge a higher amount. And then kick 50 percent of the delta back to us. And we'll all be better off. OK, so if we move beyond the question of whether we like that sort of conduct to the question of where the liability is imputed, we have to go to the statute. OK, and the statute clearly provides a fee restriction that applies to health care providers. OK, it's undisputed. It defines the term health care providers and it doesn't define it to include agents. So the health care provider can violate the fee restriction provision. An agent of the health care provider cannot on its own violate the fee restriction provision. So to turn your analogy on its head a little bit, if an independent entity, not a health care provider, had obtained the records and was selling them, there would be no restrictions. But let's make sure we do focus on statutory interpretation since this is a case about this. If we made this a criminal statute, in my hypothetical, ABC records could be held liable as an aider in a better to crime. Perhaps if you made it a criminal statute, but it is not a criminal statute. It is a civil statute. And the legislature was very clear in the way it assigned liability. So what you have to do, therefore, I think, is you have to respond to Mr. Boreson's point about this being an absurd result. Absolutely. The Wisconsin legislator in crafting this regime decided where it was wise to place liability. It said if you're putting a request to a health care provider and they, through their agents, are allowing excessive fees to be charged, then you go back to that health care provider and you sue them and you recover those excessive fees. You have a complete remedy. But what they did not want and what it would be absurd to allow is to allow somebody to sue the billing clerk. Okay? So you present that request to a billing clerk or to a records clerk. Okay? She or he is an agent of the health care provider. The legislature did not want the billing clerk sued or the person who the request was passed to in the billing clerk's office who facilitated a response to the request. You have to be careful in assigning liability because it has downroad consequences. Here, the legislature wanted liability to be imputed to the person responsible, the entity responsible, the health care provider, and not to billing clerks and other agents of health care providers. Now, let's be very clear. We should examine the statutory text. There is only one argument from the statutory text made here by plaintiffs that suggests that there's even a tenable argument that the statute applies to agents. It appeals to the remedies provision that provides that any person can be liable for violating the statute. Here's the analogy, since we like these. I say to my son, you may not eat cake. I say to my daughter, daughter, you must eat cake. I then say to my children, if you violate my instructions, there will be discipline. I have not, by creating a remedies provision that speaks to both of them, upended the clear instructions that I gave to each of them separately. Okay? That is a basic facility with language. And if you move forward with that sort of activity with respect to your own children, you know, it's painfully clear that you cannot interpret language in the way that is suggested here. And to do so by statutory construction canons. For instance, the plaintiff's reading reads the phrase healthcare provider out of the statute. It no longer has any meaning at all. Okay? It's just gone. Moreover, the plaintiff's reading points to a general provision and says it upends a specific provision. We do not do that. And finally, and let's speak briefly to chart swap. Chart swap acknowledged that agents are not within the scope of the healthcare provider definition. Chart swap acknowledged that the section 990 quoted here that just makes a basic point of agency law that a principal is liable for agent does not speak to the imputation of liability. But the chart swap court and the plaintiff appeal to absurd results. And they say, forget the statutory text and instead decide what sort of policy you would like to employ here. Frankly, your honors, that is not your duty. Your duty is to look to the text of the statute. See the clean and ambiguous language in the statute. Note that it does not apply to the agents of healthcare providers. And leave the question there. If you will indulge me, I know I'm out of time, but one more point. Mr. Butler, before you move on, a question on that vein. Similar question to what I asked to Mr. Borgeson. We're a federal court sitting in diversity. Townsend is the highest Wisconsin opinion on this. You've pointed out in your 28J letter why you believe it is not accurate. Why aren't we bound by it? Your honors, if you look to the statutory text of the provisions in issue here, there is very little doubt in my mind that you will not walk away uncertain of what the statute demands of you and how it governs this regime. You are to certify questions to the Wisconsin Supreme Court if you're generally uncertain. You are to defer to lower courts if you think that the Supreme Court would adopt the same logic. Here it is abundantly clear, for instance, from Moya, which makes very clear that the Wisconsin Supreme Court is going to interpret this statute as written. I love that case. Interpret the statute as written. That's what the Wisconsin Supreme Court is going to do. If you interpret it as written, there will be no ambiguity. There will be no uncertainty in your minds. It will clearly not apply to the agent of healthcare provider. And that will leave the plaintiff with a remedy against the healthcare provider, but not against my client, not against billing clerks, not against other agents of healthcare providers. Thank you, Mr. Butler. Mr. Borison, I want to give you two minutes in rebuttal. We've let Mr. Butler go over, and I want to give you equal time. Thank you, your honor. I think what's clear here is that we're talking about a statute that's designed to protect the patients. It's not an effort to determine how to create a method for it to be evaded by healthcare providers by hiring an agent. When he says there's no statutory provision, if you look at the words of the statute, it says any person who violates. The legislature could have very easily said any healthcare provider who violates the statute could be liable for the remedies. Instead, they used the word any person. That's a distinction. In addition, when he says that's the only basis, we also refer to 990.009, which is a statutory construction rule under Wisconsin law that talks in terms of agents are basically held liable with them. But the other part, you know, this idea that somehow this is barred by the statute limitations under statute that the appellate courts in Wisconsin have held only applies if mandated by the legislature. There's absolutely nothing before the court to show that somehow they intended the statutory penalty provision to apply to this particular transaction. So, under the South Milwaukee case, which we saw in our briefs where they clearly say we're not going to interpret it or apply that statute unless clearly mandated. We're not going to take away causes of actions, meritorious causes of action by implementing that statute when there's no call for it by the legislature. I think that and let me just address the billing clerk idea. The difference between the billing clerk, they sort of reduced it to the absurd that a billing clerk could be held liable. If that billing clerk was sending out an invoice and said, send me the money and collected the money, then yes, they could be held liable. But these people are not a billing clerk. They're not just simply sending out the invoices. They're sending out the invoices, overcharging and collecting the money. A billing clerk simply prepares. It's a ministerial act. They are not a billing clerk here. It's a completed transaction where they asked for the wrong amount and collected the wrong amount. Thank you, your honors. Thank you, Mr. Boris and thank you, Mr. Butler. The case will be taken under advisement and the court will close proceedings then for today. Thank you.